**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 16-cv-11590 |
| v. | ) ) | Judge Amy J. St. Eve |
| 3327 WEST 47TH PLACE, LLC, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff 3327 National Fire & Marine Insurance Company has moved for a judgment in its favor on the pleadings with respect to Count II of Plaintiff National Fire & Marine Insurance Company's Complaint pursuant to Federal Rule of Civil Procedure 12(c) [24]. The Court grants Plaintiff's motion in part and denies it in part.

## BACKGROUND

### I.      Plaintiff's Complaint

On January 4, 2017, Plaintiff filed its First Amended Complaint seeking a declaration that the insurance policy (the "Policy") it issued to Defendant does not provide coverage for the fire loss that occurred on April 30, 2016 to a brick warehouse (the "Building") that Defendant owns. (First. Am. Compl. ¶¶ 1-2.) In deciding whether to issue an insurance policy to Defendant, Plaintiff hired an inspector, David Moller, to examine the property and interview one of the building's owners. (*Id.* ¶ 18.) The resulting inspection report, which depended in part on representations the building's owner made, indicated that the building had security cameras, an ADT security system, and motion and door alarms. (*Id.* ¶¶ 19-20.)

The Policy included a Protective Safeguards Endorsement ("PSE"), which stated that, "as a condition of this insurance," Defendant was required to "maintain [certain] protective devices," including an "Automatic Burglary Alarm, protecting the entire building that sends signals to an outside central station or a police station." (*Id.* ¶ 27.) Pursuant to the Endorsement, Plaintiff was not required to pay for "loss or damage caused by or resulting from fire" if prior to the loss Defendant "failed to maintain any protective safeguard listed." (*Id.*) The Policy also provided that any coverage required under the policy was void in any case of Defendant's fraud. (*Id.* ¶ 28.) Finally, the Policy contained an exclusion that stated that Plaintiff would not provide coverage for any act Defendant committed or conspired to commit with the intent to cause a loss. (*Id.* ¶ 29.)

On April 30, 2016, the Building sustained significant damage due to a fire that started at 7:32 PM on the first floor of the building. (*Id.* ¶ 30.) A security guard discovered the fire and called 911. (*Id.* ¶ 32.) The Chicago Fire Department concluded that fire originated as "the result of a mattress being ignited by an open flame ignition source." (*Id.* ¶¶ 34-35.) In Count II, Plaintiff seeks a declaration of no coverage because, under the PSE in the Policy, Defendant was required to maintain an Automatic Burglary Alarm protecting the whole building, and Defendant failed to do so. (*Id.* ¶¶ 50-60.)

## II. Defendant's Affirmative Defenses

In response to Plaintiff's Complaint, Defendant submitted Affirmative Defenses. (R. 31 Def.'s Am. Affirmative Defenses.) In those Affirmative Defenses, Defendant alleges that Gateway Underwriters Agency, Inc. ("Gateway") is an agent of Plaintiff, having entered into a Producing Agency Agreement with Plaintiff in 2011. (*Id.* ¶ 4.) As Plaintiff's agent, Gateway is

authorized to process applications for property insurance and to hire third-party vendors to perform loss control underwriting inspections on Plaintiff's behalf. (*Id.* ¶¶ 5-6.) Overland Solutions, Inc. ("Overland") performs loss control underwriting inspections of commercial buildings for insurance companies, and Gateway entered into a letter of understanding with Overland to perform loss control underwriting surveys. (*Id.* ¶¶ 7-8.) Defendant alleges that the letter provided that Overland would perform inspections pursuant to its written Standard Operating Procedures ("SOPs"), which were designed in accordance with industry standards for loss control underwriting inspections. (*Id.* ¶ 9.) The SOPs require that Overland's field representatives prepare a written report within 72 hours of an inspection and that the report accurately reflect the building's hazards and controls (e.g. fire and burglar alarm systems) and make appropriate recommendations for uncontrolled hazards. (*Id.* ¶¶ 10-11.) The SOPs also emphasize the importance of photographs in completing a satisfactory inspection. (*Id.* ¶ 12.)

Defendant alleges that it purchased the Building in May 2013, and in October 2013, Sentinel Alarm Co., Inc. ("Sentinel") installed and connected a burglar alarm system and video security camera system for Z-Mattress, a tenant occupying first floor space in the Building. (*Id.* ¶¶ 13-14.) The purpose of the burglar system, which consisted of motion detectors and door sensors, was to detect any unauthorized entry into the Z-Mattress store. (*Id.* ¶¶ 14-15.) The video security system included 13 cameras inside the store and 3 cameras outside the store. (*Id.* ¶ 17.) Sentinel also installed 2 additional door sensors in the first floor space and additional motion detectors in the basement and in the second floor of the building—spaces Z-Mattress also leased. (*Id.* ¶ 18.) Nationwide Digital Monitoring Company monitored the burglar alarm system in the leased spaces. (*Id.* ¶ 19.)

Plaintiff insured the Building for the policy period between December 2014 and December 2015 (the "original policy"). (*Id.* ¶ 20.) The premium for the initial policy was $18,469. (*Id.* ¶ 21.) Defendant alleges that Plaintiff's underwriting requirements included an underwriting inspection and that Gateway hired Overland to perform the inspection of the Building. (*Id.* ¶¶ 22-23.) Defendant claims that this inspection was necessary in part to verify the accuracy of the information in Defendant's insurance application, which Globe Insurance Agency ("Globe) prepared and submitted to Plaintiff for a quote for property insurance coverage. (*Id.* ¶ 24.) Defendant alleges that it never saw the application before Globe submitted it. (*Id.* ¶ 25.) The insurance application indicated that ADT installed and serviced the Building's burglar alarm system. (*Id.* ¶ 26.)

Defendant asserts that the inspection was also necessary to allow Plaintiff to cancel the policy if the inspection revealed a material misrepresentation or Defendant's violation of any terms of the policy. (*Id.* ¶ 27.) Defendant's managing member signed the policy, but he only reviewed the first page of the policy before signing it and did not have any information regarding the burglar alarm system in the Building. (*Id.* ¶ 28.) He never told any Globe representative that an ADT alarm system serviced the Building. (*Id.* ¶ 29.)

In January 2015, Overland assigned the underwriting inspection to David Moller, a loss control field representative since July 2013, who had previously worked for Allstate Insurance Company from 1990 to 2009 and had performed over 1,000 inspections in his career. (*Id.* ¶¶ 30-31, 33.) Overland received $91 for the inspection. (*Id.* ¶ 31.) Defendant claims that, based on his experience, Moller knew that underwriters had the responsibility to evaluate commercial property risks to determine if it is profitable for the company to insure the risk and to determine the appropriate premium. (*Id.* 34.) Defendant also alleges that, given Moller's experience, he

knew that as a third-party underwriter, he was the insurance company's "eyes and ears" for purposes of inspecting the property. (*Id.* ¶¶ 35-36.)

Moller performed an inspection of the Building on February 3, 2015 and it lasted no more than one hour. (*Id.* ¶ 39.) Moller prepared a Value Survey Report (the "Report") following his inspection. (*Id.* ¶ 41.) Moller had unlimited access to the Building during his inspection and no one from Defendant's company accompanied him. (*Id.* ¶ 42-43.) Moller took 6 exterior photographs and 15 photographs of the interior of the Building. (*Id.* ¶ 44.) One of the interior photographs, which was the only photograph Moller took of the burglar system or video security system, showed two keypads, one motion detector, and one door sensor. (*Id.* ¶ 45.) Defendant alleges that Moller assumed that ADT monitored the alarm system in the Building because one of the keypads had the ADT insignia. (*Id.* ¶ 46.) Neither of the pictured keypads serviced the alarm system in Z-Mattress's spaces and Moller did not test the keypads. (*Id.* ¶¶ 47-48.) Moller's Report states that the Building had an ADT burglar alarm system with motion detectors, door contacts, and security cameras. (*Id.* ¶ 49.) Defendant's managing member never told Moller that the Building had an ADT system or that it had security cameras. (*Id.* ¶ 50.) Defendant alleges that notwithstanding his inspection, Moller (1) did not know the location of any of the detectors or cameras in the Building; (2) failed to disclose the existence of a control panel or keypad in the Z-Mattress's space; and (3) failed to disclose that there was no motion detector on the third or fourth floor. (*Id.* ¶¶ 51-54.) Moller did not verify that each floor was equipped with a burglar alarm system nor did he make any recommendations or identify corrective actions for the Building. (*Id.* ¶¶ 55-56.)

Defendant alleges that Plaintiff received Moller's Report on February 9, 2015, more than 60 days after the original policy had been in effect. (*Id.* ¶ 57.) Plaintiff renewed the insurance

coverage for the Building effective December 1, 2015 through December 1, 2016 (the "renewal policy"). (*Id.* ¶ 58.) Plaintiff issued the renewal with a $19,400 premium without an application or underwriting inspection. (*Id.* ¶¶ 59-60.)

On April 30, 2016, a fire in the Building originated in the first floor space Z-Mattress leased that had a security system. (*Id.* ¶¶ 61-62.) The Chicago Fire Department made forcible entry into the Building and the Department classified it was "incendiary," which means a human, either purposefully or accidentally, started the fire. (*Id.* ¶¶ 63-64.) Defendant alleges that a Z-Mattress employee was in the Building until the afternoon of the fire, and the Z-Mattress burglar system was armed, in service, and operable at the time. (*Id.* ¶¶ 65-66.) Z-Mattress's burglar system was never activated or triggered. (*Id.* ¶ 67.) Plaintiff cancelled the renewal policy effective June 29, 2016, but it did not return the entire premium to Defendant. (*Id.* ¶ 68.)

On the basis of these allegations, Defendant asserts the following affirmative defenses to Count II: (1) Defendant substantially complied with the PSE; (2) the PSE was ambiguous; (3) Plaintiff waived the right to assert a breach of the PSE because it had constructive knowledge that the entire Building was not secured by a burglar alarm system and because it failed to return the entire premium to Defendant; (4) Plaintiff is estopped from invoking the PSE as a basis for no coverage because Defendant paid an inspection fee and thus had a reasonable expectation that Plaintiff would notify it of any issues with the Building, which it did not; (5) even if there had been a burglar alarm system covering the entire Building, it would have detected only entry or movement in the building and not the fire, and thus Defendant's purported breach of the PSE is not material to the fire loss. (*Id.* ¶¶ 69-94.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). "When a Rule 12(c) motion is used in an attempt to dispose of the case on the merits, the Court applies the summary judgment standard, except that the Court may consider only the contents of the pleadings." *VFC Partners 39 LLC v. Huntley Bldg. Dev. Corp.*, No. 15-CV-9646, 2017 WL 2345543, at *2 (N.D. Ill. May 30, 2017) (citing *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)). The Court thus takes the well-pleaded allegations in the nonmoving party's pleadings as true and draws all reasonable inferences in favor of the nonmoving party—in this case, Defendants. *Id.* Where the plaintiff moves for judgment on the pleadings, "the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Hous. Auth. Risk Retention Grp., Inc. v. Chi. Hous. Auth.,* 378 F.3d 596, 600 (7th Cir. 2004). Put differently, judgment on the pleadings is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *VFC Partners*, 2017 WL 2345543, at *2. The pleadings the Court may consider "include the complaint, the answer, and any written instruments attached as exhibits." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Additionally, the Court "may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from prior proceedings in the case." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013).[1]

---

[1] Because Plaintiff has attached Defendant's application for insurance, the underwriter's Value Survey Report, Defendant's insurance policy, an engineering report, the Chicago Fire Department's report on the incident, and the deposition transcript of Mohammad Abdeljaber, Defendant's executive, to its Amended Complaint and these documents are central to its claim, the Court may consider these attachments in ruling on the present motion.

## ANALYSIS

Plaintiff argues that it is entitled to judgment on the pleadings because Plaintiff failed to comply with the PSE, which it claims was a condition precedent to coverage for a fire loss. The Seventh Circuit has held, in analyzing insurance coverage, that a clear endorsement requiring a protective device or system is a condition precedent to coverage for certain losses and that if the insured fails to comply with the endorsement's requirements, there is no coverage under the insurance policy. *See, e.g.*, *Goldstein v. Fid. & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 754 (7th Cir. 1996) (finding no coverage where policy and endorsement stated "that the property will not be covered if the sprinkler system is not in working order" and it was not disputed that the sprinkler system was not in working order at the time of the [loss]"); *Indian Harbor Ins. Co. v. Randolph Partners, LLC -740 Series*, No. 08 C 629, 2010 WL 3155974, at *5 (N.D. Ill. Aug. 10, 2010) (finding no coverage where endorsement clearly required insured to "maintain a central station burglar and fire alarm as a condition of coverage" and insured failed to do so); *Burmac Metal Finishing Co. v. W. Bend Mut. Ins. Co.*, 825 N.E.2d 1246, 1253-55 (Ill. App. 2d Dist. 2005) (upholding jury decision to exclude coverage due to insured's failure to maintain protective safeguard).

Here, it is undisputed that Defendant's insurance policy with Plaintiff included a PSE, which stated that, "as a condition of this insurance," Defendant was required to "maintain [certain] protective devices," including an "Automatic Burglary Alarm, protecting the entire building that sends signals to an outside central station or a police station." (Am. Compl. ¶ 27; R. 8, Def.'s Ans. ¶¶ 27, 51-53.) It is also undisputed that Defendant did not have an Automatic Burglary Alarm protecting the entire Building. (Def.'s Ans. ¶ 54; Ex. J, Dep. of Mohammed Abdeljaber 162-63.) Despite these undisputed facts, Defendant asserts several affirmative

defenses that it argues create a genuine issue of material fact as to whether Plaintiff must cover Defendant's loss. The Court addresses each affirmative defense in turn.

## I. Substantial Compliance

Defendant first argues that it substantially complied with the PSE because Sentinel installed a burglar alarm system and video security camera system for Z-Mattress, Defendant's first-floor tenant, consisting of 8 motion detectors, 9 door sensors, and 16 cameras and those systems were active and connected at the time of the fire. Defendant relies largely on *Burmac*, 825 N.E.2d at 1251, in which the insurance policy at issue contained a PSE that required that the insured maintain an automatic sprinkler system as a condition to coverage. The insurer denied coverage arguing that the insured had failed to comply with the PSE because it had removed or capped between 3 and 13 of the 600 sprinklers in the insured's system. *Id.* After the trial court initially granted summary judgment, the court in *Burmac* held, under the specific facts at issue, that the question of whether the insured had substantially complied with the PSE was an issue of fact that barred a finding of summary judgment. *Id.* On remand, the jury found that the insured had failed to substantially comply with the PSE, and the appellate court upheld that verdict. *Id.* at 1253, 1255.

Defendant's reliance on *Burmac* is unavailing due to the factual differences present in this case. First, in *Burmac*, the insured party maintained the required sprinkler system itself, as the PSE in its policy required. Here, the PSE's plain language also required that Defendant itself maintain a burglary alarm system. (Am. Compl. ¶ 27; R. 8, Def.'s Ans. ¶¶ 27, 51-53.) Specifically, the policy provides that "As a condition of this insurance, you are required to maintain the protective devices," which included the burglar alarm system. (Am. Compl., Ex. D, Policy National 69-70.) The policy also clearly states that "the words 'you' and 'your' refer to

the Named Insured shown in the Declarations," and the Named Insured shown in the Declarations is Defendant. (*Id.* at National 21, 31.) Despite the explicit language in the policy, here, in contrast to *Burmac*, it is undisputed that although Z-Mattress installed an alarm system in parts of the Building, Defendant itself did not maintain any burglary alarm system, and accordingly, Defendant failed to substantially comply with the PSE. (Def.'s Ans. ¶ 54; Ex. J, Dep. of Mohammed Abdeljaber 162-63.)

Second, in *Burmac*, the record indicated that the insured had removed or capped between 3 and 13 of the 600 total sprinklers in its system, meaning that at least 587 or 98% of the sprinklers were operational. 825 N.E.2d at 1251. In contrast, here, the Building had four floors with a total square footage of 217,000 feet. (Ex. J, Dep. of Mohammed Abdeljaber 146, 166-67.) Z-Mattress leased only 95,000 square feet and Z-Mattress only placed alarm sensors in its first floor space and in portions of its second floor and basement spaces. Thus, even drawing all reasonable inferences in Defendant's favor, Z-Mattress's system covered at best less than 50% of the total square footage of the Building and failed entirely to cover two floors of the Building, which falls well short of substantially complying with the PSE's requirement that Defendant maintain a system that protected the *entire* Building. *Indian Harbor*, WL 3155974, at *5 (rejecting insured's substantial compliance argument where tenant had an alarm on the first floor but entire building was not secured by the alarm); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 495–96 (4th Cir. 1998) (finding no coverage where insured had some protective safeguards but failed to install protective safeguards on its entire property as required).

Accordingly, even drawing all reasonable inferences in Defendant's favor, Defendant did not substantially comply with the PSE's requirement that it maintain an automatic burglary alarm system.

## II.    Materiality

Defendant next argues that an issue of fact exists as to whether Defendant's failure to comply with the PSE was material to the fire loss at issue.  Specifically, Defendant argues that its breach of the PSE was not material because even if there had been a burglar alarm system covering the entire Building, it would have detected only entry or movement in the building and not the fire, and thus it would not have prevented the fire loss.

Defendant's materiality argument fails as a matter of law.  Under Illinois law, an insurer does not need to show a causal connection between the breach of a condition precedent and the subsequent loss.  *Wabash Properties, Inc. v. Transp. Indem. Co.*, No. 84 C 7641, 1985 WL 2452, at *3–4 (N.D. Ill. Aug. 21, 1985).  In *Wabash*, for example, the insured argued that the insurer could not avoid coverage unless it proved that the failure of the insured's sprinkler system, which the insured was required to maintain as a condition of the insurance policy, caused the destruction of the building.  *Id.* at *3.  The court explained that an insurer "need not show a causal connection between the breach of the condition and the loss."  *Id.* (citing *Mack v. Liverpool and London and Globe Insurance Co.*, 329 Ill. 158 (1928)).  Put differently, "[i]f an insured breaches a condition of the policy, 'it is immaterial that the breach was in no manner whatsoever connected with, or that it did not at all occasion, the loss, for the warranty is a condition on which the validity of the contract rests, which failing, the contract fails.'" *Id.* at *4. (citation omitted).  Accordingly, the court found that since the insured had breached the sprinkler requirement in its policy, "coverage under the policy was suspended during the breach whether or not the failure of the sprinkler caused the loss."  *Id.; see also Chi. Title & Trust Co. v. Ill. Fair Plan Ass'n*, 414 N.E. 2d 205 (1980) (holding insurer did not have to prove building's vacancy

caused fire damage to enforce provision voiding coverage during periods when building was vacant).

Defendant relies on *Landmark Am. Ins. Co. v. Green Lantern Roadhouse LLC*, No. 07-CV-0535-MJR, 2009 WL 413086, at *5 (S.D. Ill. Feb. 18, 2009), for the proposition that under the Illinois Insurance Code a breach of an insurance policy must materially affect the loss or hazard insured. In *Landmark*, the insured certified in its insurance application that it had installed burglar and fire alarm systems despite the fact that the insured property never contained such alarms. *Id.* at *7. The insurer refused coverage and sought to have the policy declared void and rescinded due to the insured's misrepresentations. *Id.* at *1. The court referred to § 154 of the Illinois Insurance Code, which provides in part that "[n]o misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance . . . shall defeat or avoid the policy unless it shall have been made with actual intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the [insurer]." *Id.* at *3. Relying on that statute, the court found that the insured's misrepresentation did not void the insurance policy from the outset. *Id.* at *4. Instead, the court found that the parties' policy itself provided a remedy for the insured's breach of the alarm requirement, regardless of § 154, and explained that the policy dictated that because the insured did not have a burglar alarm system it was automatically not liable for claims resulting from theft but did not impact damages due to fire. *Id.*

Defendant's reliance on *Landmark* is futile for several reasons. First, *Landmark* is not binding on this Court, no other court has cited *Landmark* approvingly, and importantly, as one other court has noted, the Illinois Supreme Court's decision to deny coverage due to an exclusion that had no material connection to the at-issue loss in *Mack* is still good law and is applicable

here. *Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309, 1322 (S.D. Fla. 2006) (applying Illinois law to insurance coverage dispute and finding no coverage because "the Illinois Supreme Court in *Mack* . . . enforced an exclusion which had no relation to the at-issue loss, and that decision has not been overturned.") (citing *Mack,* 160 N.E. at 225); *see also Warczak v. Attorneys' Title Guar. Fund, Inc.*, 2015 IL App (2d) 140677-U, ¶ 36, *appeal denied,* 42 N.E.3d 376 (Ill. 2015) (citing *Mack* with approval).  Second, here, like in *Landmark*, the policy itself provides for a remedy if Defendant failed to maintain a burglar alarm system, but unlike in *Landmark*, the policy's bar on coverage was not limited to claims for theft loss. Here, the parties' policy provides that Plaintiff "will not pay for loss or damage caused by or resulting from *fire*, water, or theft if, prior to the loss, [Defendant] failed to maintain any protective safeguard listed in the Schedule."  (Am. Compl., Ex. D, Policy National 70.)  As discussed above, an automatic burglary alarm system protecting the entire building was one of the protective safeguards listed.  (*Id.* at 69.)  Thus, here, unlike in *Landmark*, the parties' policy explicitly provided for no coverage for fire loss if Defendant failed to maintain a burglary alarm system, which Defendant admits it failed to do.

Accordingly, given the clear language in the parties' policy and the Illinois precedent, the Court finds the exclusion in the PSE applies to the fire damage here regardless of whether Defendant's breach of the PSE was material to that damage.  *Wabash*, WL 2452, at *4 ("coverage under the policy was suspended during the breach whether or not the failure of the [protective safeguard] caused the loss.").

## III.    Waiver

Defendant next argues that Plaintiff waived its right to assert a breach of the PSE as a basis for not offering Defendant coverage.  Under Illinois law, "[w]aiver arises from an

affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004) (citations omitted); *see also PPM Finance, Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004). "A waiver may be either expressed or implied, arising from acts, words, conduct, or knowledge of the insurer." *Home Ins.,* 821 N.E.2d 269, 282 (citations omitted). "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (1991). Put differently, a party relying on implied waiver must point to an "act [that is] clear, unequivocal and decisive." *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). However, "[a]n implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Home Insurance,* 821 N.E.2d 269, 282 (citation omitted); *see also PPM Finance*, 392 F.3d at 895. "Where there is no dispute as to the material facts and only one reasonable inference can be drawn therefrom, it is a question of law whether the facts proved constitute waiver. *Delta Consulting*, 554 F.3d at 1140 (citation omitted). If the facts necessary to constitute waiver are in dispute or if reasonable minds might differ as to the inferences to be drawn from the undisputed evidence, however, then the issue becomes a question of fact. *Id.* The burden of proof to show waiver is on the party asserting it as a defense. *Sphere Drake Ins. Ltd. v. All Am. Life Ins. Co.*, 300 F. Supp. 2d 606, 628 (N.D. Ill. 2003), *aff'd sub nom.*, 376 F.3d 664 (7th Cir. 2004).

Here, Defendant argues that Plaintiff waived its right to assert a breach of the PSE as a basis for no coverage because (1) it had constructive knowledge that the entire Building was not secured by a burglar alarm system yet took no action to cancel the policy or correct this

deficiency, and (2) it failed to return the entire premium to Defendant despite the alleged lack of coverage. The Court addresses each waiver argument in turn.

### A. Constructive Knowledge Waiver

As noted above, Defendant first argues that Plaintiff waived its right to assert a breach of the PSE as a basis for no coverage because David Moller, as an underwriter and agent of Plaintiff, was responsible for inspecting the building and through Moller, Plaintiff had constructive knowledge that the entirety of the Building was not secured by a burglar alarm system yet Plaintiff did not cancel the policy despite this knowledge. Plaintiff argues that it did not waive the exclusion because it did not have actual knowledge that the Building did not have a burglar alarm system covering the entire premises since Defendant's application and Plaintiff's inspector's report both indicated that there was an ADT system covering the Building.

Despite Plaintiff's arguments, in Illinois, "[a]n insurer may waive a policy defense by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense." *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1100 (2008) (citing *Am. States Ins. Co. v. Nat'l Cycle, Inc.*, 631 N.E.2d 1292, 1298 (1994) (quoting *Kenilworth Ins. Co. v. McDougal*, 313 N.E.2d 673, 677 (1974))). If the insured could have known the facts giving rise to the defense, "it can be said that the insurer has constructive knowledge of the relevant facts, and that constructive knowledge may be sufficient to form the basis of waiver even if actual knowledge is absent." *Lumbermen's*, 890 N.E.2d at 1100. Thus, under Illinois law, the correct inquiry is whether, at the time that Plaintiff executed the insurance policy, "it could have known the facts later leading it to conclude that the [the fire loss] was not covered, if it had been exercising ordinary diligence." *Id.* (citations and quotations omitted).

Here, viewing the facts in the light most favorable to Defendant, Defendant has sufficiently raised an issue of material fact as to whether Plaintiff had constructive knowledge that the entire Building did not have a central burglar alarm system covering it.  In Illinois, as a matter of agency law, the knowledge of an agent is imputed to the agent's principal." *Fifth Third Mortg. Co. v. Kaufman*, No. 12 C 4693, 2016 WL 2851554, at *6 (N.D. Ill. May 14, 2016) (citing *McRaith v. BDO Seidman, LLP*, 909 N.E.2d 310, 331 (2009)).  It is undisputed that David Moller, the inspector, was an agent of Plaintiff.  Plaintiff entered into an agreement with Gateway, which retained Moller's company, Overland, to perform loss control underwriting inspections of properties Plaintiff was considering insuring. (R. 31, Def.'s Am. Affirmative Defenses ¶¶ 4-8.)  During his inspection, Moller had unlimited access to the Building, yet he did not report that the alarm system in the Building only served the Z-Mattress space and he did not report that there was no alarm system on the third or fourth floor of the Building.  (*Id.* ¶ 42-43, 53-54.)  The parties dispute whether Defendant's executive provided any information to Moller about the burglar alarm system in the Building.  (*Id.* ¶ 50; Am. Compl. ¶18-19.)  Under these facts, taking the allegations in Defendant's pleadings as true and drawing all reasonable inferences in its favor, there is a genuine dispute of material fact as to whether Moller and Plaintiff "could have known the facts later leading it to conclude that the [the fire loss] was not covered, if it had been exercising ordinary diligence." *Lumbermen's*, 890 N.E.2d at 1100.

In addition to its arguments about lacking actual knowledge, Plaintiff also argues that when it renewed Defendant's policy, it sent Defendant notices and disclosures that put Defendant on notice that it had to maintain the required protective safeguards.  (R. 37, Pl.'s Reply 8-10.)  Plaintiff has attached the referenced documents to its Reply brief.  (*Id.* Ex. 1-2.)  As an initial matter, Defendant has moved to exclude these arguments because the referenced documents

were not attached to the pleadings. (R. 38, Def.'s Mot. to Exclude.) As Defendant notes, the

Court may only consider the pleadings, documents attached to the pleadings, and facts of which

it can take judicial notice. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d

449 (7th Cir. 1998). Plaintiff contends that the Court should consider these arguments and

documents because Plaintiff provided the documents to Defendant in connection with the

insurance policy at issue and thus, the documents are essentially part of the policy, which

Plaintiff did attach to its pleadings.

Despite this argument, the Court grants Defendant's motion and will not consider the

documents or Plaintiff's arguments based on these documents because (1) as noted above,

Plaintiff failed to attach the documents to its Amended Complaint despite the fact that

Defendant's failure to maintain protective safeguards was Plaintiff's express basis for denying

coverage, and (2) Plaintiff also failed raise the notices and disclosures or any arguments related

to them in its motion for judgment on the pleadings, despite Defendant having already raised its

waiver and estoppel affirmative defenses at that time.[2] *See Arethas v. S/TEC Grp., Inc.*, No. 04

C 6743, 2005 WL 991782, at *6 (N.D. Ill. Apr. 14, 2005) (refusing to consider attachments that

were not included in the pleadings in analysis of motion for judgment on pleadings); *Luellen v.*

*City of E. Chicago*, 350 F. 3d 604, 612 n. 4 (7th Cir. 2003) (failure to raise argument in opening

brief waives argument).

Additionally, even if the Court admitted the notices and disclosures Plaintiff attached in

considering Plaintiff's argument that Defendant's waiver defense fails because Defendant was on

notice of the protective safeguard requirement at the time of the policy renewal, that argument

_____

[2] Although the Court allowed Defendant to amend its affirmative defenses after the Plaintiff filed its
motion for judgment on the pleadings, as the Court noted in that Order, "Plaintiff was already on notice of
the primary bases for Defendant's amended affirmative defense—waiver and estoppel—because these
arguments were included in Defendant's initial affirmative defense." (R. 30, July 26, 2017 Order 4.)

would still be unpersuasive. In Illinois, "a renewal of a policy is, in effect, a new contract of assurance, and, unless otherwise expressed, on the same terms and conditions as were contained in the original policy. *Burmac*, 825 N.E.2d 1246, 1255 (2005) (citing *Dungey v. Haines & Britton, Ltd.,* 614 N.E.2d 1205 (1993). "[I]t is the general rule that when a policy renewal is made, the terms and conditions of the original policy become part of the renewal contract of insurance. *Id.* (citation omitted). Here, the parties do not dispute that the terms and conditions of the original and renewal policy, as well as the notices Plaintiff sent at the time of renewal, were all the effectively same—they all required Defendant to maintain a central burglar alarm system. As discussed above, however, under Illinois law, the question is not whether Defendant was aware of the protective safeguard requirement, but whether Plaintiff "could have known the facts later leading it to conclude that the [the fire loss] was not covered, if it had been exercising ordinary diligence" at the time of the inspection. *Lumbermen's*, 890 N.E.2d at 1100. On that issue, as discussed above, there is a genuine dispute of material fact.

Accordingly, the Court denies Plaintiff's motion for judgment on the pleadings as to Defendant's waiver defense based on constructive knowledge.

### B. Waiver Based on Plaintiff's Failure to Return Premiums

Defendant also argues that Plaintiff waived its right to deny coverage based on the PSE because it failed to return the entire premium to Defendant. Specifically, Defendant claims that if, as Plaintiff argues, the policy was invalid due to the lack of a burglar alarm system, then Defendant was entitled to a return of the entire premium. Defendant, however, misunderstands Plaintiff's argument. Plaintiff has not argued that Defendant's failure to maintain a burglar alarm system rendered the entire policy void and it has not attempted to rescind the contract. (*See* R. 37, Pl.'s Repl. 11.) Instead, Plaintiff argues that Defendant's failure to maintain a

burglar alarm system bars insurance coverage for several specific losses, including the fire loss at issue here.[3]

Importantly, the Seventh Circuit has held, in an old but similar case, that an insurers' retention of premiums even after the insured has violated a condition did not waive the insurer's right to deny the specific coverage to which the breached condition was related. *Buehler Corp. v. Home Ins. Co.*, 495 F.2d 1211 (7th Cir. 1974). In *Buehler*, the insurance policy at issue required that the insured maintain a working sprinkler system, and after the insured failed to maintain such a system, the insurer denied coverage for a fire loss. *Id.* at 1211-1212. The insurer did not return to the insured any of the premium paid for the insurance, and the insured thus claimed that the insurer had waived the right to avoid coverage. *Id.* at 1212. The district court found that the insured was not entitled to coverage because it had violated the policy term requiring it to maintain a working sprinkler system, and the Seventh Circuit affirmed. *Id.* The court explained that if an insured violated a condition of a policy that the policy explicitly provided would render the entire contract void, such as the premises becoming vacant, then the insurer would have to rescind the contract promptly and return the premiums to void the contract—failure to do so would waive the insurer's right of rescission. *Id.* at 1214. Where, however, the insurer, as in *Buehler*, did not rescind the policy or declare it void upon violation of the condition, but merely exercised its right to deny coverage for a specific loss related to that condition, the insurer did not waive the right to deny coverage by failing to return premiums. *Id.*

The Seventh Circuit has recently endorsed this position, and other courts have similarly found no waiver where an insurer failed to return the premium after denying coverage for a

---

[3] If Plaintiff, contrary to its statements in its Reply, has implicitly argued that Defendant's failure to maintain an alarm system covering the entire Building rendered the policy void and barred coverage for *any* loss, the Court does not analyze that argument here. The Court only considers the argument that Defendant's failure to maintain an alarm system bars coverage for the fire loss claimed here.

specific loss. *Estate of Luster v. Allstate Ins. Co.*, 598 F.3d 903, 912 (7th Cir. 2010) (explaining that an exclusion from coverage did not require the return of premium, but voiding the policy altogether would require insurer to return premiums). *Stony Brook Marine Transp. Corp. v. Wilton*, No. 94-CV-5880 (JS), 1997 WL 538913, at *13 (E.D.N.Y. Apr. 21, 1997) ("Since defendant is not seeking an equitable rescission . . . but rather is defending based upon plaintiff's failure to comply with the terms and provisions of the insurance contract, the return of the premium prior to defendant making his summary judgment motion was not necessary."); *Great Lakes Reinsurance (UK), PLC v. Durham Auctions, Inc.*, No. 1:07CV460HSO-JMR, 2008 WL 687023, at *3 (S.D. Miss. Mar. 10, 2008) (finding that plaintiff's "failure to tender premiums . . . has not amounted to a waiver of its right to pursue this declaratory action.").

Here, the PSE explicitly provided that Plaintiff would not be liable for coverage in relation to a fire loss if Defendant failed to maintain a burglar alarm system. Defendant failed to maintain such a system, and now Plaintiff has denied coverage. As in *Buehler* and *Stony Brook*, Plaintiff has not rescinded or voided its contract with Defendant, it has simply exercised its right to deny coverage for fire loss based on Defendant's failure to maintain a burglar alarm system. As such, as in *Buehler* and *Stoney Brook*, Plaintiff has not waived its right to deny coverage by failing to return the premium because it has not voided or rescinded the entire policy.

## IV.    Estoppel

Defendant next argues that by paying the inspection fee,[4] Defendant had a reasonable expectation that Plaintiff would notify it of any issues with the Building, and by failing to notify it of any issues, Defendant was estopped from invoking the PSE as a basis for no coverage.

---

[4] Plaintiff denies that Defendant paid for Moller's inspection, however, as discussed below, the Court finds that Defendant is not estopped from denying coverage regardless of whether Defendant paid for the inspection.

In Illinois, the party asserting an estoppel defense has the burden of proving the elements of estoppel. *Sphere Drake*, 300 F. Supp. 2d at 628 (citation omitted). "Under Illinois law, estoppel is based upon an insurer's conduct that misleads the insured to his detriment." *Great Lakes Reinsurance (UK) v. 1600 W. Venture, LLC*, No. 16 C 2145, 2017 WL 2559061, at *3 (N.D. Ill. June 13, 2017) (citing *Burress–Taylor v. Am. Sec. Ins. Co.*, 980 N.E.2d 679, 686 (1st Dist. 2012). "Cases in which an insurer's conduct is found to amount to estoppel typically involve a concession of liability by the insurer, advance payments by the insurer to the plaintiff in contemplation of eventual settlement, and statements by the insurer which encourage the plaintiff to delay filing his action." *Foamcraft, Inc. v. First State Ins. Co.*, 606 N.E.2d 537 (1st Dist. 1992). Put differently, "[a]n insurer will be estopped from raising a limitations defense where its actions during negotiations are such as to lull the insured into a false sense of security, thereby causing him to delay the assertion of his rights." *Mitchell v. State Farm Fire & Cas. Co.*, 796 N.E.2d 617 (4th Dist. 2003) (citation omitted). In order to succeed on its estoppel defense, one element that Defendant must show is detrimental reliance. *See In re Krueger,* 192 F.3d 733, 741 (7th Cir. 1999); *Moriarty v. Hills Funeral Home, Ltd.,* 221 F.Supp.2d 887, 895 (N.D. Ill. 2002).

Courts often reject estoppel defenses where the policy clearly stated that coverage was excluded if the insured did not maintain protective safeguards and where the insured provided false information about its protective safeguards to obtain the insurance policy. In *Yera, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 1398 EDA 2013, 2014 WL 10936714, at *4 (Pa. Super. Ct. Apr. 22, 2014), for example, the insurance policy at issue explicitly required that the insured maintain a sprinkler system covering the entire insured building. In applying for the insurance, the insured affirmatively stated the building was 100% covered by sprinklers, and the insurer

issued a policy based on that information. *Id.* Given the clear language in the policy and the lack of any statements by the insurer indicating that a sprinkler system was not required, the court found that the insurer was not estopped from denying coverage based on the lack of a fully operative sprinkler system. *Id.* Similarly, in *Goldstein*, 86 F.3d at 753–54, the policy excluded coverage if the sprinkler system was not in working order, and although it was undisputed that the system was not in working order, the insured claimed that the insurer was estopped from denying coverage because it charged him a lower rate for his insurance, which he claimed indicated he did not have to comply with the policy. The court rejected the insured's argument finding that he had not shown that he relied on a misrepresentation to his detriment because the policy expressly stated that "the property would not be covered if it did not comply with the protective safeguards clause in his insurance contract." *Id.* at 754.

Additionally, courts have also found that an insured may not invoke an insurer's inspection as an estoppel defense because the inspection is conducted for the benefit of the insurer not the insured. In *Si Meat Vill., Inc. v. Amguard Ins. Co.*, 208 F. Supp. 3d 490, 494 (E.D.N.Y. 2016), *appeal dismissed* (May 2, 2017), for example, the insured claimed that the insurer was estopped from denying coverage because the insurer's agent inspected the property and did not verify that there was a fire alarm covering the building as the policy required. The court explained that the insured "could rely on the inspections to absolve it of its own responsibility to comply with the protective safeguards endorsement only if the inspections had been conducted for the benefit of [insured]." *Id.* The court found, however, that the insurer, as is generally the case, conducted the inspections for its own benefit and not the insured's, and accordingly rejected the insured's estoppel defense. *Id.* *See also Berenato v. Seneca Speciality Ins. Co.*, 240 F. Supp. 3d 351, 360 (E.D. Pa. 2017) (rejecting argument that insurer was estopped

from denying coverage due to inspector failing to notify insured of sprinkler requirement because plain language of policy required sprinkler system).

Here, as in *Yera*, *Goldstein*, and *Si Meat*, Defendant's estoppel defense fails. Defendant's insurance policy explicitly provided that Defendant was required to maintain a burglar alarm system to receive coverage for a fire loss. Further, it is undisputed that in its application for insurance, before Moller conducted his inspection, Defendant, through its agent, affirmatively indicated that ADT installed and serviced a burglar alarm system covering the Building. (Am. Compl. ¶¶ 16-17, 44.) Regardless of whether Defendant or its agent prepared the application, Defendant is responsible for the content of the application and the policy expressly stated that "the property would not be covered if it did not comply with the protective safeguards clause in his insurance contract." *Goldstein*, 86 F.3d at 754. Put simply, given Defendant's affirmative statements in its application prior to the inspection that it had an alarm system covering the Building, Defendant cannot now assert that it relied on Plaintiff's inspection to its detriment or that Plaintiff's inspection was the basis for its belief that there was a burglar alarm system covering the Building. Additionally, as the court explained in *Si Meat*, Plaintiff's agent conducted the inspection of the Building for its own benefit not for Defendant's benefit. Based on the plain language in the policy, Defendant knew it was required to maintain a burglar alarm system, and Plaintiff's inspection, conducted for its own benefit, did not alter Defendant's understanding of this obligation.

In sum, this is not a case where Plaintiff conceded liability, advanced payments to Defendant, or "lull[ed] the insured into a false sense of security." *Mitchell*, 796 N.E.2d at 621. Here, Defendant itself asserted that it had a burglar alarm system covering the Building before Plaintiff's inspection, and that fact, coupled with the plain language in the policy requiring an

alarm system, demonstrates that Defendant did not detrimentally rely on any of Plaintiff's purported representations.

Accordingly, the Court finds that Plaintiff is not estopped from denying coverage.

## V.    Ambiguity

Lastly, Defendant argues that the PSE is ambiguous and could reasonably be interpreted to mean that loss or damage caused by fire was excluded from coverage only if Defendant failed to maintain the applicable fire-related protective safeguard.  Put simply, Defendant's argument fails because the language in the PSE was not ambiguous.  The PSE provided that Plaintiff would "not pay for loss or damage caused by or resulting from *fire*, water, or theft if, prior to the loss, [Defendant] failed to maintain *any* protective safeguard listed in the Schedule."  (Am. Compl., Ex. D, Policy National 70) (emphasis added.)  As discussed above, an automatic burglary alarm system protecting the entire building was one of the protective safeguards listed in the Schedule.  (*Id.* at 69.)  The policy thus explicitly provided that fire damage specifically would be excluded from coverage if Defendant failed to maintain a burglar alarm system, among other protective safeguards.  This language is not in any way ambiguous, and the Court will not "strain to find ambiguity in an insurance policy where none exists."  *McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125, 1127 (1999).  Indeed, several courts have found similar PSEs to be enforceable and unambiguous.  *See, e.g. Burmac*, 825 N.E.2d at 1255 (upholding jury verdict enforcing similar PSE); *Indian Harbor*, WL 3155974, at *5 (rejecting ambiguity argument and finding no coverage where endorsement required insured to "maintain a central station burglar and fire alarm as a condition of coverage" and it failed to do so); *see also Tuscany Bistro, Inc. v. Sirius Am. Ins. Co.*, No. A-6293-08T2, 2011 WL 3517000, at *4 (N.J. Super. Ct. App. Div. Aug. 12, 2011) (finding no genuine ambiguity in PSE because it was not so confusing as to make it

difficult to determine the boundaries of coverage since it clearly denoted that an alarm system was a condition of coverage).  Here, the plain language of the policy is clear and unambiguous and the Court need can apply the PSE as written, without considering Defendant's alternative interpretation.  *Pekin Ins. Co. v. Skender Const.*, 2013 IL App (1st) 123532-U, ¶ 27 ("[W]here the language of an insurance policy is clear and unambiguous, it will be applied as written.").

Accordingly, the Court finds that the PSE is not ambiguous.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for judgment on the pleadings in part and denies it part and finds that there is a genuine issue of material fact as to whether Plaintiff waived its right to exclude coverage based on Defendant's failure to maintain a burglar alarm system covering the entire Building.  The Court grants Defendant's motion to exclude the documents attached to Plaintiff's Reply brief and Plaintiff's arguments related to those documents.

**Dated:** November 16, 2017

_____
AMY J. ST. EVE
United States District Court Judge